UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:                                                    Case No. GK 14-07149-jtg

DIANE MARIE SCHULDT,                                       Chapter 13

                              Debtor.                     Hon. John T. Gregg
_____/

**MEMORANDUM DECISION REGARDING**
**<u>CONFIRMATION OF CHAPTER 13 PLAN</u>**

This matter comes before the court in connection with the Original Chapter 13 Plan [Dkt. No. 17] (the "Plan") filed by Diane Marie Schuldt, the debtor in the above-captioned bankruptcy case (the "Debtor"). The court is called upon to determine whether the Debtor's income must be both earned and received during the applicable six month period in order to constitute "current monthly income" under section 101(10A) of the Bankruptcy Code, or whether it need only be received during that period.

This issue is extremely important to determining the Debtor's obligations in her Chapter 13 case. If the court concludes that certain compensation received but not earned during the applicable six month period should be included as current monthly income, the "applicable commitment period" under the Plan will be sixty months and the current version of the Plan cannot be confirmed. However, if such compensation should be excluded from her current monthly income because it was not earned within the applicable six month period as the Debtor contends, the applicable commitment period under the Plan will only be thirty-six months and the Plan may be confirmed as currently proposed.

For the following reasons, the court holds that the Debtor's income need only be received, not both received and earned, during the applicable six month period.  The court shall therefore deny confirmation of the Debtor's Plan.

### **BACKGROUND**[1]

The Debtor has been employed by Western Michigan University ("WMU") for approximately thirty-four years.  She receives compensation from WMU every two weeks.  As with most wage payment schedules, the Debtor does not receive compensation immediately following the conclusion of the pay period during which her wages are earned.  Instead, the Debtor receives compensation one week after the conclusion of the bi-weekly pay period, which the parties characterize as a "one week hold back."

On November 12, 2014, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  As discussed below, the Debtor is required to calculate her current monthly income in order to ultimately determine the applicable commitment period of her Plan.  The definition of current monthly income directs the Debtor to include all sources of income during the sixth month period ending on the last day of the calendar month preceding the petition date. In this case, the six month period began on May 1, 2014 and ended on October 31, 2014.

On May 6, 2014 and during the applicable six month period, the Debtor received a pay check from WMU in the amount of $1,911.78, representing compensation for services she performed from April 14, 2014 through April 27, 2014.  Thus, although the Debtor received this compensation during the relevant period, the compensation was actually earned prior to such period.

---

[1]    The facts in this case are not in dispute, as the parties previously filed a Stipulation of Facts [Dkt. No. 21].

The Debtor filed her Plan on December 5, 2014.  According to the Debtor, her current monthly income excludes the compensation she received on May 6, 2014, and is therefore less than the applicable state median income.  As such, the Debtor contends that the applicable commitment period under her Plan should be thirty-six months.

At a hearing on December 30, 2014, Brett N. Rodgers, in his capacity as the Chapter 13 trustee (the "Trustee"), through counsel, advised the court that he disputed the means by which the Debtor had calculated her current monthly income because the Debtor failed to include the compensation she received on May 6, 2014.[2]  The Trustee therefore requested an opportunity for the parties to brief the issue and return for oral argument.[3]  After the parties timely filed briefs [Dkt. Nos. 22-23], the court conducted a final hearing on January 27, 2014.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## DISCUSSION

As noted by numerous courts and commentators, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") has given rise to many challenging issues of statutory interpretation.  The court's undertaking in this case presents just such a challenge.

Section 101(10A) provides, in pertinent part, that "current monthly income":

> (A)     means the average monthly income from all sources that the debtor *receives* (or in a joint case the debtor and the debtor's spouse

---

[2]     At the hearing, the Trustee explained that if the compensation the Debtor received on May 6, 2014 is excluded from current monthly income, the Debtor's annualized current monthly income would be $43,075.82, which is less than the state median income for a family of one.  If, however, such compensation must be included, the Debtor's annualized current monthly income would be $47,407.50, which is more than the state median income for a family of one.

[3]     Neither the Debtor nor her counsel appeared at the initial hearing.

> receive) without regard to whether such income is taxable income, *derived during the 6-month period ending on –*
>
> (i)      the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii). . .

11 U.S.C. § 101(10A) (emphasis added).

Current monthly income plays a role in multiple aspects of a bankruptcy case.[4]  First, as in this case, a debtor's current monthly income determines how long a debtor must remain in his or her bankruptcy case (his or her applicable commitment period) if the trustee or an unsecured creditor raises an objection to confirmation of the debtor's plan.  *See* 11 U.S.C. § 1325(b)(1)(B); 11 U.S.C. § 1325(b)(4).  If the debtor's current monthly income, multiplied by twelve, is greater than the median family income for a family of the same size in the state in which the debtor's case is filed, the debtor's applicable commitment period is sixty months.  *See* 11 U.S.C. § 1325(b)(4)(A)(ii).  However, if the debtor's current monthly income, multiplied by twelve, falls below the median family income for the applicable state, the debtor need only remain in his or her Chapter 13 case for thirty-six months.  *See* 11 U.S.C. § 1325(b)(4)(A)(i).

Second, if the trustee or an unsecured creditor objects to confirmation of a debtor's proposed plan, current monthly income is used to determine a debtor's "projected disposable income," which is the amount required to be paid during the debtor's applicable commitment period of thirty-six or sixty months.  *See* 11 U.S.C. § 1325(b)(1)(B); 11 U.S.C. § 1325(b)(2)(A)(i) and (ii).  Disposable income is determined by taking the current monthly income of the debtor and

---

[4]      The term "current monthly income" is also used to determine whether substantial abuse has occurred under section 707(b).  The court declines to discuss the role of current monthly income in a Chapter 7 case because it is not at issue in this case.  The court does note, however, that its interpretation of section 101(10A) in this Chapter 13 case is likely to be viewed as at least somewhat relevant in a case under Chapter 7.

subtracting "amounts reasonably necessary to be expended" for the debtor's maintenance and support, charitable contributions, and business expenses. 11 U.S.C. § 1325(b)(2). Nonetheless, adjustments may be made to this calculation based on known or virtually certain changes in circumstances, given the backward-looking nature of the current monthly income calculation. *See Hamilton v. Lanning*, 560 U.S. 505, 524 (2010).

In the instant case, the court considers current monthly income in connection with the Debtor's applicable commitment period. The Trustee and the Debtor both focus their arguments on the term "derived" as contained in section 101(10A). According to the Trustee, section 101(10A) requires only that a debtor receive the income within the applicable six month period. The Trustee contends that the term "derived" in the statute is synonymous with the term "received." Therefore, the Trustee emphasizes, the plain meaning of current monthly income requires only that the Debtor actually receive the income during the six month period, regardless of when such income might be earned. The Trustee also offers several alternative arguments. The Trustee argues that even if the court finds the statute ambiguous, the legislative history, the underlying purpose of BAPCPA, and other provisions of the Bankruptcy Code should persuade this court to hold that section 101(10A) does not require that a debtor's income be both received and earned during the six month period.

The Debtor asks this court to adopt a different interpretation. The Debtor asserts that the plain meaning of the statute requires this court to ascribe different meanings to the terms "receives" and "derived." Like the Trustee, the Debtor believes the term "receives" means to be given, presented with, or paid; to accept or take delivery of something sent or offered.[5] However, the

---

[5]    At oral argument, the Trustee and the Debtor agreed that section 101(10A) requires that income be received during the applicable six month period. The parties further agreed that the compensation at issue in this case constitutes "income" received by the Debtor during the relevant period.

Debtor contends that the dictionary definition of the term "derived" offered by the Debtor should lead this court to conclude that "derived" is not synonymous with "receives." Unlike the Trustee, the Debtor does not advance any alternative arguments. Instead, she is steadfast that the plain meaning of the statute requires the court to ascribe different meanings to the two terms.

Although other courts have considered the intended meaning of the term "derived," the conclusions of those courts are far from consistent. *See Miller v. United States Trustee (In re Miller)*, 519 B.R. 819 (B.A.P. 10th Cir. 2014) (income must only be received, regardless of when earned); *In re Katz*, 451 B.R. 512 (Bankr. C.D. Cal. 2011) (same); *In re Arnoux*, 442 B.R. 769 (Bankr. E.D. Wash. 2010) (income must be both received and earned); *In re Robrock*, 430 B.R. 197 (Bankr. D. Minn. 2010) (income must be earned, regardless of when received); *United States Trustee v. Meade (In re Meade)*, 420 B.R. 291 (Bankr. W.D. Va. 2009) (requiring connection between compensation received and period of time services rendered); *In re Burrell*, 399 B.R. 620 (Bankr. C.D. Ill. 2008) (income must only be received, regardless of when earned); *In re Bernard*, 397 B.R. 605 (Bankr. D. Mass. 2008) (income must be earned, regardless of when received); *In re DeThample*, 390 B.R. 716 (Bankr. D. Kan. 2008) (income must only be received, regardless of when earned). Moreover, the Sixth Circuit Court of Appeals has yet to consider this issue. Understandably then, the parties in this case advance different interpretations of "current monthly income" to fit their respective needs.

A.      *The Plain Meaning of the Statute*

In their briefs, the Debtor and the Trustee both contend that section 101(10A) is unambiguous, and that the court should apply the plain meaning as guided by principles of statutory construction. The United States Supreme Court has instructed bankruptcy courts to presume that a legislature "says in a statute what it means and means in a statute what it says

there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *see Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). A court should only review legislative history to resolve a statutory ambiguity, and any such review should not conflict with the purpose of the legislation itself. *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 808 n.3 (1989) (court should review legislative history and overall purpose only if statute ambiguous); *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) (upon discerning unambiguous and plain meaning of statute, inquiry ends). "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citing *Ron Pair*, 489 U.S. at 241)).

In support of their arguments, the parties present dueling definitions of "derive" for the court to consider. The Trustee directs the court to the Merriam-Webster Online Dictionary, which defines the term "derive" as "to take, receive, or obtain, especially from a specified source." Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/derive. The Trustee then asks the court to apply that definition to the language in section 101(10A) so that it essentially reads "income taken, received, or obtained during the look back period."

The Debtor offers another dictionary with a purportedly different meaning of "derived." *See* Oxford English Dictionary 1081 (2d ed. 2009). The Debtor argues that "derived" should be defined as "(derive something from) obtain or get something from . . . base something on a modification of something else . . . originate or develop from." *Id.* The Debtor states that use of the term "derived" requires the court to focus "on the source or origin of the thing received." (Debtor's Br. at 3.) At oral argument, the Debtor noted that the definition offered by the Trustee in his brief was incomplete. According to the Debtor, the definition offered by the Trustee is

similar to that offered by the Debtor based on the additional definitions of "derive" contained in the Merriam-Webster Online Dictionary.

At the outset, the court agrees with the starting point suggested by both parties. When the meaning of a term that is neither considered a term of art nor expressly defined by statute is in question, a court should consult the ordinary meanings contained in general and legal dictionaries. *See*, *e.g.*, *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *FDIC v. Meyer*, 510 U.S. 471, 476 (1994); *Grand Traverse Band of Chippewa Indians v. U.S. Attorney*, 369 F.3d 960, 967 (6th Cir. 2004).

The majority of the dictionaries cited by the parties, as well as those independently reviewed by the court, expressly refer to the word "receive" when explaining the meaning of "derive." *See*, *e.g.*, Webster's Ninth New Collegiate Dictionary 342 (1989); Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/derive; The Random House Dictionary of the English Language 389 (6th ed. 1973); Black's Law Dictionary 444 (6th ed. 1990); Ballentine's Law Dictionary 340 (3d ed. 1969). For example, according to Webster's Ninth New Collegiate Dictionary, the term "derive" means "to take or receive, esp. from a specified source," or "to obtain from a specified source." Webster's Ninth New Collegiate Dictionary 342 (1989). Another dictionary similarly defines the term to mean "to receive or obtain from a source or origin (usually fol. by *from*)" or "to trace from a source or origin." The Random House Dictionary of the English Language 389 (6th ed. 1973).

The definitions provided by legal dictionaries also refer to the word "receive." Black's Law Dictionary defines the past tense, "derived," to mean "[r]eceived from specified source." Black's Law Dictionary 444 (6th ed. 1990). Similarly, Ballentine's Law Dictionary defines "derive" in the present tense to mean "[t]o receive from a source or origin; to originate or to acquire

characteristics from a source which is traceable." Ballentine's Law Dictionary 340 (3d ed. 1969). Therefore, according to the ordinary meaning ascribed by general and legal dictionaries, the terms "derive" and "derived" are synonymous with the term "receives." *See In re Katz*, 451 B.R. at 516; *In re DeThample*, 390 B.R. at 720.

The definition from the Oxford English Dictionary offered by the Debtor does not dictate a different conclusion. As emphasized by the Trustee at oral argument, in the event that the preposition "during" is substituted in place of the preposition "from" in the definition relied upon by the Debtor, such definition would no longer require that the income be obtained, or originate, *from* all sources. Instead, it would require that the income from all sources be obtained or originate (*i.e.*, received) *during* the applicable six month period. In the definition offered by the Debtor, all three subsets include a parenthetical "derive from" or "derive something from" in order to explain the meaning. These same subsets also include examples of the term's use in a sentence or phrase, all of which use "derive" or "derived" in conjunction with the preposition "from." Thus, when the preposition "during" is used with "derived," even the Debtor's preferred definition is transformed into one of timing that complements the statute's earlier use of the term "receives."[6]

In a decision heavily relied upon by the Trustee, the Bankruptcy Appellate Panel for the Tenth Circuit also concluded that "derived" should be given a temporal meaning. *In re Miller*, 519 B.R. at 823.[7] In *Miller* the court recognized the difficulty in using a definition similar to that offered by the Debtor in this case. *Id*. at 824. The court explained that the use of the debtor's definition improperly relies on the preposition "from." *Id*. at 823. The *Miller* court emphasized

---

[6]     This court further notes that Congress knew how to limit the term "derived" by joining it with the preposition "from" in at least one other section of the Bankruptcy Code. *See* 11 U.S.C. § 902 (defining "special revenues" as "receipts derived from . . .").

[7]     The Debtor did not cite to *Miller* in her brief.

that the preposition "from" is absent from the definition of current monthly income.  Instead, Congress chose to use the preposition "during" in the definition of current monthly income, thereby giving "derived" a temporal meaning.  *Id.*  This court agrees with the well-reasoned decision in *Miller*.

As support for her argument that "derived" focuses on the source, and thus the date the funds are earned, the Debtor cites to a decision from the Bankruptcy Court for the Central District of Illinois.  *See In re Burrell*, 399 B.R. at 625-26.  While it is true that the court in *Burrell* concluded that the terms are not synonymous, the Debtor's reliance on *Burrell* is misplaced.  In *Burrell* the court found that the definition of current monthly income was ambiguous due to the grammatical structure, discrepant dictionary definitions, and the case law existing at that point in time.  *Id.* at 627.  Importantly, the court relied on the legislative history to ultimately conclude that use of the term "derived" was mere surplusage in the definition of current monthly income.  *Id.*  The court held that income need only be received during the applicable six month period, thereby effectively striking "derived" from the statute.  *Id.*

The decision in *Burrell* does not support the Debtor's position in this case.  As noted above, the Debtor does not contend that any ambiguity exists in the statute.  Instead, the Debtor simply asks this court to apply the plain meaning (by using her definition) to find that income be earned, obtained or originated during the six month period.  Because the court in *Burrell* considered the legislative history after finding an ambiguity in the statute, *Burrell* provides little support for the Debtor's argument.

The Debtor also argues that the *Burrell* court, as well as other unidentified courts, "are using the wrong definition of 'derived.'"  (Debtor's Br. at p. 5.)  After initially relying on *Burrell*, the Debtor later suggests in her brief that *Burrell* was incorrectly decided.  According to the Debtor,

because the term "derived" appears in the final version of the statute, but not in prior versions, Congress intended the term to have a different meaning than "receives." The Debtor's argument in this regard is again incongruous with her overall position that the plain meaning of the statute controls. If the statute is unambiguous as the Debtor contends, the Debtor need not ask this court to consider the legislative history. Other than recognizing different definitions of the term "derived," *Burrell* is inapposite to the Debtor's argument in this case.

In addition to *Burrell*, the Debtor cites to a decision from the Bankruptcy Court for the Western District of Virginia in support of her argument that "receives" and "derived" are not synonymous. *See In re Meade*, 420 B.R. at 305. The Debtor's reliance on *Meade* is, like her reliance on *Burrell*, misplaced. In *Meade*, the court considered whether a debtor-husband's annual bonus and a debtor-wife's seasonal income, both of which were received during the six month period, should be included as current monthly income. *Id*. at 304-07. The *Meade* court held that the bonus should be prorated over a twelve month period as a matter of policy. *Id*. at 306. According to the *Meade* court, "Congress intended for there to be some connection between the compensation received and the period of time in which the applicable services for such compensation were rendered." *Id*. at 305. Yet, the *Meade* court did not apply the same prorated approach to the seasonal income of the debtor-wife in the same case. *Id*. at 307. Instead, it included only the income actually received by the debtor-wife during the six month period. *Id*.

Moreover, the court in *Meade* did not address the plain meaning of the statute. *Id*. at 305. Instead, it applied a policy-based rationale to the two sources of income at issue in the case. *Id*. at 306. Unlike in *Meade*, the Debtor in this case does not advance a policy-based argument. The Debtor only contends that section 101(10A) unambiguously requires income to be both earned and

received during the applicable six month period.  The Debtor's attempt to rely on *Meade* is therefore unavailing.[8]

Although not directly raised in her brief, the Debtor infers that giving the term "derived" essentially the same meaning as "receives" will result in statutory redundancy.  This court has uncovered little, if any, support for the purported rule that different words must always have different meanings.[9]  The decision in *Miller* is again instructive, as it thoroughly explains how both terms are given an operative effect.  In *Miller* the debtor argued that "derived" must have a different meaning than "receives" because the income *originated*, or was *obtained*, prior to the applicable six month period.  *Id*. at 824.  After rejecting this argument because none of the dictionary definitions of "derive" uses the term "earn," the court addressed the alleged redundancy by stating as follows:

> Careful consideration of this statute indicates that, even when "received" and "derived" are given the same meaning, every portion of the statute remains essential.  We note that the first portion of the statute, containing the term "receives," is in the present tense and explains what kind of income is included in a [current monthly income] calculation, with respect to its receipt.  Thus, "income from all sources that the debtor receives . . . without regard to whether such income is taxable" is included in [current monthly income].  The second part of the . . . definition sets the time period applicable to that income; the income must have been "derived during" the look-back period.  When the statute is read as a whole, then, it contains no surplusage – both portions of the definition of [current monthly income] are necessary to the calculation.

---

[8]     In addition, as adeptly noted in *Miller*, the *Meade* court was not required to decipher the plain meaning of the term "derived" because the parties had stipulated that the term "derived" means "earned."  *Miller*, 519 B.R. at 826.  Thus, the *Meade* court did not interfere with the parties' stipulation and instead limited its decision to only those issues before it.  420 B.R. at 306.

[9]     In her brief, the Debtor does not cite to any authority in support of this position.  The Debtor does cite to *Lamie*, as well as *Walters v. Metropolitan Ed. Enter., Inc*.  *See* 540 U.S. at 534; 519 U.S. 202, 209 (1997).  These decisions only state that where possible, each word in a statute should be given effect.  For reasons discussed herein, the court's decision comports with this principle.

*Id*. at 824 (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 314 (2006)); *see In re Katz*, 451 B.R. at 516-17; *but see also In re Burrell*, 399 B.R. at 627 (finding surplusage but relying on legislative history to hold income must only be received). This court agrees with *Miller* – no redundancy exists, because both terms serve a separate purpose within the statute due to the temporal nature of "derived."

The Debtor's next argument is that the use of the present tense "receives" and the past tense "derived" requires this court to give different meanings to "receives" and "derived." The Debtor confusingly suggests that a conflated temporal requirement be read into the statute, such that "current monthly income is to be calculated based on those funds that the debtor both received and earned" during the six month period. (Debtor's Br. at p. 3.) The Debtor's argument regarding use of different verb tenses strains interpretation. Moreover, it is not supported by citation to any relevant authority. The better interpretation is to separate the temporal component from the type of income that is eligible for inclusion as "current monthly income." *See In re Miller*, 519 B.R. at 824. As discussed above, "receives" in the present tense relates to the type or kind of income (*i.e.*, income from all sources). Conversely, the past tense "derived" relates only to the applicable time period in which the income from all sources must be received. The use of different verb tenses does not require a finding that the terms must be given different meanings.[10]

In sum, this court finds that the term "receives" is synonymous with "derived." Notwithstanding the Debtor's contentions to the contrary, both terms have an operative effect in the statute – one relates to the type or kind of income received, the other relates to the time during which such income is received. The court thus concludes, based on the plain meaning of section

---

[10]     For the first time at oral argument, the Debtor contended that the court should consider the intransitive nature of the verb "derived." The timing of this argument is prejudicial to the Trustee. Moreover, even if it had been timely made, the court would not be persuaded because "derived' relates to the Debtor's income in a temporal sense, as already discussed herein.

101(10A), that income need only be received, not both received and earned, during the applicable six month period.

B.      *The Legislative History*

As noted above, when the plain meaning of a statute is clear, the court's inquiry ends. Although the Debtor characterizes the legislative history as unhelpful, this court could arguably find ambiguity based on the competing definitions offered by the parties.[11]   As such, the court feels compelled to briefly address the legislative history of section 101(10A).

In his brief, the Trustee argues that in the event the statute is deemed ambiguous, the legislative history directs this court to treat the term "derived" as surplusage.  The Trustee relies on *Burrell* in support of this position.  As already discussed, the *Burrell* court found that the statute was ambiguous due to the uncertainty surrounding use of the terms "receives" and "derived."  *In re Burrell*, 399 B.R. at 627.  Consistent with principles of statutory interpretation, the court turned to the limited legislative history of section 101(10A), which provides the following definition of "current monthly income":

> [T]he average monthly income from all sources that the debtor receives (or, in a joint case, the debtor and the debtor's spouse receive), without regard to whether it is taxable income, in the six-month period preceding the bankruptcy filing. . .

*Id.* (citing H.R. Rep. 109-31(I), 109th Cong., 1st Sess. 2005, 2005 U.S.C.C.A.N. 88, 99 n. 60.)

The legislative history continues as follows:

> Section 102(b) of the Act amends section 101 of the Bankruptcy Code to define "current monthly income" as the average monthly income that the debtor receives (or in a joint case, the debtor and debtor's spouse receive) from all sources, without regard to whether it is taxable income, in a specified six month period preceding the filing of the bankruptcy case.

---

[11]      The Debtor has not argued that the court should consult the legislative history in the event the court finds the statute ambiguous.  Again, the Debtor instead urges this court to find the legislative history irrelevant based on the statute's plain meaning.

*Id*.  The *Burrell* court found that nothing in the legislative history implies that income must be earned within the applicable six month period.  *Id*.  Instead, the court noted that the term "derived" appears in the final version of the statute without any further explanation in the legislative history.  *Id*.  As such, the *Burrell* court concluded that the addition of the term "derived" was mere surplusage and did not substantively alter the prior draft of the statute.  *Id*.

In her brief, the Debtor directs this court's attention to *Arnoux*, but solely for the proposition that income be both earned and received.   *In re Arnoux*, 442 B.R. at 776.  While *Arnoux* is inapposite to the Debtor's arguments because it relies on the legislative history as opposed to finding the statute ambiguous, the *Arnoux* court discusses the legislative history and ultimately reaches the opposite conclusion from *Burrell*.  The facts in *Arnoux* are somewhat distinguishable from those in *Burrell* and in this case, though.  In *Arnoux* the United States Trustee argued that income earned within the sixth month period, but not received within that same period, should not constitute "current monthly income."  *Id*. at 772.  According to the United States Trustee, it made no difference from a temporal perspective when the income was actually received, as long as the income was earned in the six month period.  *Id*.  Conversely, the debtor in *Arnoux* argued that the income must be received and earned during the six month period.  *Id*.

Like the court in *Burrell*, the *Arnoux* court turned to the legislative history after finding the statute to be ambiguous.  *Id*. at 775-76.  The court held that a debtor's income must be earned and received within the applicable six month period because the phrase "during the six month period" relates to both "receives" and "derived."  *Id*. at 776.  The court emphasized that the legislative history only refers to when income is received and not when income is earned.  *Id*.  Disagreeing with *Burrell*, the court in *Arnoux* concluded that Congress' decision to include the term "derived" must have significance beyond the requirement that income be received as set forth in prior drafts

of the statute.  *Id*.  The *Arnoux* court did not, however, expressly discuss the ordinary meanings ascribed to the terms "derived" and "receives."  *Id*. at 774-75.  Instead, the debtor and the United States Trustee seem to have been in agreement that "derived" means "earned."  *Id*. at 772.

Finally, the *Arnoux* court considered the definition of current monthly income to be "clumsily written."  *Id*. at 775.  This court does not disagree.  The statute would clearly benefit from a more precise grammatical structure.  However, "inelegant drafting . . . does not provide a sufficient reason to reject an otherwise correct interpretation of the [Bankruptcy Code]."  *Baud v. Carroll*, 634 F.3d at 339-40 (citing *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (accepting interpretation of provision of Bankruptcy Code even though statute "awkward")); *see In re Seafort*, 669 F.3d 662, 674 (6th Cir. 2012) (acknowledging drafting issues in some portions of BAPCPA).

Both *Burrell* and *Arnoux* intelligibly parse the legislative history to reach different conclusions.  This court has carefully reviewed what little legislative history exists and tends to agree with the Debtor, at least in this respect.  The legislative history is simply inconclusive, as nothing in it reveals why Congress inserted the term "derived" into section 101(10A).  *See In re Sorrell*, 359 B.R. 167, 176-77 (Bankr. S.D. Ohio 2007) (legislative history of BAPCPA provides little assistance because no joint conference statement or report of floor managers was prepared, and versions passed by Senate and House of Representatives were identical).  The court therefore declines to find it persuasive one way or another, to the extent even relevant to the court's analysis at this point.[12]

---

[12]     Although the court finds the legislative history to be inconclusive, the court notes that the legislative history in no way conflicts with this court's interpretation of the statute's plain meaning or, as briefly discussed below, the underlying purpose of BAPCPA.

*C.*      *The Underlying Purpose and Policy Considerations*

To reiterate, a court's inquiry ends when it determines a statute to be unambiguous. Nonetheless, the court notes that its interpretation of section 101(10A) is reinforced by the underlying purpose and policy of BAPCPA.

Notwithstanding her reliance on the alleged plain meaning of the statute, the Debtor indirectly offers a policy-driven argument in her brief to counter the Trustee's alleged plain meaning.[13]  The Debtor contends that if a temporal meaning is ascribed to the term "during," this court would be endorsing an approach that unfairly distorts the Debtor's financial situation because it "may not be representative of a debtor's typical income and ability to repay."  While it is true that the Debtor's income could generally be imbalanced by a bonus or another income discrepancy or anomaly, the Sixth Circuit Court of Appeals has noted that section 521(i)(3) provides a basis for a debtor to request that the court reset or "select" a different six month period that is more representative of a debtor's current monthly income.  *Baud v. Carroll*, 634 F.3d 327, 332 n.1 (6th Cir. 2011) (citations omitted).[14]  When it included section 521(i)(3) as part of BAPCPA, Congress apparently accounted for any alleged distortions of a debtor's "current monthly income" by authorizing a bankruptcy court to consider a more accurate six month period.  *See id.*  As such, the Debtor's policy argument that income would be improperly distorted if the court were to adopt the Trustee's position is diminished.

More importantly, both the United States Supreme Court and the Sixth Circuit Court of Appeals have repeatedly stated that BAPCPA is remedial in nature and was designed to ensure

---

[13]      In her brief, the Debtor did not expressly raise the underlying purpose of BAPCPA as a consideration for the court in this case.  However, because the Debtor did rely on policy-based decisions, albeit for a different purpose, the court feels compelled to address the argument.

[14]      The comments of the Sixth Circuit in *Baud* regarding section 521(i)(3) are arguably *dicta*.  This court makes no determination regarding potential relief that might be afforded to a debtor under section 521(i)(3), as that issue is not presently before this court.

that debtors repay creditors the maximum amount that debtors can afford.  *See*, *e.g.*, *Ransom v. FIA Card Servs., N.A.*, ___ U.S. ___; 131 S. Ct. 716, 721 (2011); *Baud*, 634 F.3d at 342-43.  If this court were to adopt the Debtor's interpretation of current monthly income, the Debtor's bi-weekly pay period would be reduced from thirteen to twelve pay checks within the applicable six month period.  *See Miller*, 519 B.R. at 827 (income in six month period would be reduced by 8% if it must be earned and received).  By including income that is received within the applicable six month period, regardless of when it is earned, this court is capturing the maximum amount of the Debtor's income consistent with the purpose of, and policy behind, BAPCPA.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, this court concludes that income need only be received within the applicable six-month period, regardless of when it is earned.  Because the applicable commitment period under the Debtor's Plan is sixty months, not thirty-six months as currently proposed, the court shall deny confirmation of the Plan.  The court shall enter a separate order consistent with this Memorandum Decision.

**Signed: February 13, 2015**





John T. Gregg
United States Bankruptcy Judge